**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL LOUGHMAN | Criminal No.: No. 24-cr-10121 |

## <u>DEFENDANT DANIEL LOUGHMAN'S SENTENCING MEMORANDUM</u>

Now Comes the Defendant, Daniel Loughman, by and through undersigned counsel, and respectfully submits the following memorandum in support of his upcoming sentencing.

Probation has submitted a PSI, that calculates Defendant's USSG at level 34, with a three-level reduction for acceptance of responsibility, along with a criminal history category of II counting one prior conviction, resulting in a guideline imprisonment range of 121-151 months. Id. ¶ 113 (Level 31, criminal history II = 121-151). While counsel does not disagree, in essence, with this calculation as it comports with the guidelines' standard requirements, counsel asks the Court to sentence Defendant below the indicated guideline range for the following reasons.

1.      First, counsel respectfully suggests that the three-point reduction in this case does not sufficiently account for the depth of Defendant's acceptance of responsibility. Perusal of the docket, with 130 entries, demonstrates that since the initiation of this case some two years ago the Defendant has not filed even one adversarial motion to contest the case or request rulings by the Court that may favorably affect his position. In counsel's view, some

matters could certainly have been contested with respect to the gathering of evidence in this case—*e.g.*, at least one questionable search of suspected contraband that could have led to suppression of substantial evidence or an appeal of same if a denial of a motion ensued. Nevertheless, Defendant has taken full responsibility for his overall acts and did not want to burden the Court and/or the Government from having to litigate these issues. As shown below, this is because the Defendant is seeking to change his behavior that led to the instant charges.  Moreover, the Court ought to also take notice that Defendant always waived his personal appearance in court whenever asked to do so, thus saving the Government substantial costs, resources and effort by not requesting that he be physically brought into Court.

In that respect, in counsel's experience, this is not a run-of-the-mill acceptance of responsibility case. The Defendant has literally fallen on his sword ("accepting full responsibility") from the date of his arrest and has not wavered in the least from acceptance of his wrongdoing. The Supreme Court has expressly found that post-sentencing rehabilitation is an appropriate sentencing factor. "A district court at resentencing may consider evidence of the defendant's post-sentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." Pepper v. United States, 562 U.S. 476, 481 (2011). In Pepper, the Supreme Court determined that the federal sentencing scheme made it necessary to consider evidence of the defendant's post- sentencing rehabilitation for two main reasons. First, in order to fashion a sentence that is appropriate for an individual, and not just a crime, sentencing judges have traditionally considered the full range of available information. "Permitting sentencing courts to consider the widest possible breadth of

information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" Pepper at 488, quoting Wasman v. United  States, 468 U.S. 559, 564 (1984). Second, evidence of post-sentencing rehabilitation is necessary because it is relevant to many of the sentencing factors under 18 U.S.C. § 3553(a). Pepper at 491-492. In short, evidence of post-sentencing rehabilitation "bears directly on the District Court's overarching duty to 'impose a sentence that is sufficient, but not greater than necessary' to serve the purposes of sentencing.'" Pepper at 493, quoting 18 U.S.C. § 3553(a). By logical extension, efforts at *pre-sentencing rehabilitation*– particularly in the context of the Defendant's time spent in custody to date – must be considered as a factor in evaluating a just sentence. In counsel's view, the three-level downward adjustment is not sufficient enough to reward the Defendant for his full acceptance of responsibility and should be double that—or six levels. This would bring the guideline range down to Level 28 with a sentencing range of 87-108 months. Because of other factors the Court ought to consider in this case as shown below, counsel would ask the Court to consider sentencing the Defendant to the bottom of this recalculated range.

As the Court is aware, the guidelines are advisory and not mandatory. allowing for departures and variances. See, e.g. United States v. Booker, 543 U.S. 220 (2005). Consequently, the Court has the authority to give the Defendant more substantial credit for acceptance than the guidelines themselves suggest.

2.      There is little doubt in counsel's mind, after considerable investigation of the Defendant's background, that this case—and the Defendant's anti-social behavior for most of his adult life—stems from his abuse of drugs and alcohol at a young age. Counsel believes that if the Defendant was not acting under the influence of drugs in some manner, he would never be involved in the type of conduct that has been exhibited in this case and

in other incidents. Defendant submits that all his illegal and other acts were driven by substance abuse and personal trauma. Without these abuses, it is clear that the Defendant would have used his skills and talent as an auto repair mechanic in a manner that would have benefited the community and general society expects.

Undersigned counsel could certainly make a more formal argument in support of his claim that drugs and family trauma steered the Defendant into his current position. However counsel believes that the Defendant's own words, while not grammatically correct, certainly speak more eloquently than anything counsel could write. In that respect, considering editing because of attorney/client privileged material, counsel quotes from an October 1, 2025 letter that the Defendant wrote to the undersigned about his past behavior:

> *** So, I will be honest with you and say I had a very good upbringing but there were some unfortunate events to say. I will tell you everything I can …
> So my parents got divorced when I was 4 because my father was an abusive drunk. … He was not the greatest dad, but he was still my dad. The last year he was alive we started to get along but when I was 16, he was hit by a Mac truck. The truck driver fell asleep and hit my dad's Blazer when he was on his way to work on 11/30/2001. My dad was on blood thinners for a heart value he had replaced 5 or so years prior. He hit his head bad and had internal bleeding of the brain. My stepdad tried very hard to be there for me, but I never gave him a chance. I was fucked up in my head for a very long time because of my father's death, which lead to my drug use and addiction. At 16, it is a hard time for a child to lose your father. I was a coke addict till I was in my 20s. Then I stopped on my own at 21 but replaced It with drinking.
> Now what I am going to get into next is about my wife. I just want to say she became an amazing mother, but what happened between her and I was a mess. Just don't think ill of her please. It's just what I am going to say about her fucked me up for life. Now after I got married, I found out my wife of three months was cheating on me with her boss and stole a lot of money from me for drugs. I gave her another chance because we had just got married and I was 24 years old and did not know what to do. Fast forward 2 years later, I find out she is getting fucked up -again on perks and benzos and cheating on me again for a few months. She also was pregnant with our first kid. I also found texts of her and the [guy] she was cheating on

me with, telling each other that they loved each other. That is what fucked me up in my head and changed me forever.

The reason why I did not find out for a few months is because I was working 70 plus hours a week and drinking a lot *** she found out she was three months pregnant. That is when she cold turkeyed all   the drugs by herself in our bedroom and never looked back. She turned her life around and never did drugs again. She is an amazing mother to my kids. Now because she was pregnant with our first kid is why I took her back. However, her and I were never the same after that.

Two years later we had one more child. I unfortunately sunk deeper into depression and drinking and drugs. I never let any of it affect my work as a mechanic. I was working 70, 80, 90 hour weeks to support my family and habits. Then I started to do side work at home and that is when I stopped drinking and doing coke every day because I could not justify being drunk and working on someone's car. If something happened to anyone driving after I worked on their car drunk, I could not live with myself. However, sober life I could not do, because I was stressed and super depressed from my life leading up to that point and working 100 plus hours a week and all the fighting my wife and I were doing. Now add being exhausted from working that much and depression is what lead me to meth and the next 10 years of doing meth and my life spiraling out of control led me to this point. After 10 years of marriage, we separated and could not stand each other anymore. All my friends and most of my family all turned their backs on me at the start of my divorce. Then a couple years later I got fired from the shop I worked at for 14 years. Then I worked out of my driveway for a few more years. Then I dove deeper and deeper into my depression, which made me do more and more drugs. I felt like the biggest shit bag.

I then started not being there for my amazing children. I have 2 beautiful daughters that I will now miss the rest of their childhood and beginning of adulthood. I want to see grow up but I fear I will miss that, and they will hate me for that. Before I got arrested, I was trying to find a shop for me to start my own shop.  I have been a mechanic for 18 years and have just about $100k of tools and equipment I have collected over 18 years that I will still have when I get out. Now I need money to start the shop and I was behind on Child Support is why I delt with meth.

Now that I have been sober for almost 2 years, I have had a lot of time to think and talk about my problems and learned how to deal   with them in a much healthier way and also come to terms with my depression. I also have come up with a few different ways on how I will start my shop the right way and do the right things. I am going to name my shop A and V Automotive. which stands for Amelia and Violet, I am naming after my

Kids. I also want to go to NA meetings and talk to people and try to help people to get off drugs. I hope me telling my story to people will help them turn their lives around.

When I open my own shop I want to host NA meetings or some type of meetings, so I can help people get and stay clean. I don't want to do drugs anymore. All I want is to see my kids, open my shop and work on cars and bikes, and help others stay clean and sober. Also I do need to add is that my stepdad is dying of cancer and I don't think I will be out before that happens. My mom also had a heart attack last year and I don't want to lose her while I am locked up.
    I think that is all I can think of to tell you. ***

    p.s.    *** I forgot to say that all I want to do is keep working on my craft of being a mechanic and a welder. Unfortunately, because of the open detainer I can't go to a minimum where they have the Automotive tech and Diesel tech programs. So the only Programs I can do is the welding in Norfolk. I will also do the culinary arts. and maybe the barber as well.
    *** So, when I get to the feds I want to be able to talk freely without getting in more trouble. Also do every and any Automative programs for cars, trucks, and boats. Plus welding. If there is a camp in Florida, so I can be close to my parents, that would be great to go to

In undersigned counsel's opinion, this narrative by the Defendant, and counsel's discussions with Defendant about his past, unquestionably demonstrates that Defendant's former lifestyle was drug-driven and involved several serious traumatic experiences. Nonetheless there is little doubt that he is now clean and sober and is working hard at changing his behavior to societal norms. Counsel contends that it is not in the community's interest or that of the justice system to punish the Defendant with a longer than necessary sentence because of his past behavior. While dealing in drugs is a serious crime, under the circumstances of the instant case a below-the-guidelines sentence, counsel suggests, would adequately serve as determent and punishment while allowing some hope for the Defendant, who certainly appears to have conquered his addiction because of his thus far two-year imprisonment and who has a significant commitment to total rehabilitation.

**3.**      Counsel suggests that the Defendant has had an abnormal amount of tragedy in his life and that he wrongly coped with it by medicating himself and abusing substances. He is not per se a bad or evil man, but just someone who failed to deal with his personal problems.  He appears to have gotten himself onto the right path. Counsel and the Defendant realize that the Defendant must serve a considerable sentence. However, we urge the Court not to sentence the Defendant to such a long term that it will defeat the ultimate purpose of imprisonment—i.e., exact a sufficient punishment for the crime at issue and to ensure that a defendant an opportunity for rehabilitation that will enable him to successfully change his ways.

This Court bears the solemn responsibility of determining a just sentence for this individual, based on all of the relevant sentencing factors. Here, the Defendant recommends a significant sentence that not only provides adequate punishment, but one that is tempered with a focus on meaningful rehabilitation – hard work that Mr. Loughman has already begun while in State Prison awaiting sentencing in this case.

In light of Mr. Loughman's personal history, the purposes of sentencing, and the mitigating circumstances surrounding his conduct, the Defendant submits that he could benefit from any or all of the BOP's long-term drug programs. Still, the Court ought to also consider the effect a long sentence could have on a person who has demonstrated that they are trying to change their ways and one who is sensitive to personal trauma. Even the lower end sentence counsel suggested above—87 months—is a significant sentence, especially since the Defendant has already been imprisoned for two years which the BOP will probably not credit to the Defendant because he was serving an unconnected state sentence. It is a sentence which is consistent with the factors set forth in 18 U.S.C. §

7

3553(a) and is sufficient but not greater than necessary to achieve these goals. *See, e.g.*, United States v. Booker, 543 U.S. 220, 268–69 (2005); United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008). (Defendant served the state sentence, it appears, because his instant federal conduct was the basis for a violation.) Additional imprisonment for more than seven years is severe, of course, but in that time the Defendant can complete drug and other programs and remain clean and sober. Moreover, as noted, the Defendant has considerable mechanical skills and experience, and retains the tools to start his own business upon release.  This, then, is an opportunity for the justice system to not compound the mistakes the Defendant has already made in his life and give him some hope by showing mercy and saying to him that the system sees some worth in him if he follows the rules of the system. He has already completely admitted his wrongdoing, he has started down the rehabilitative path on his own, and now is the time for someone in the government hierarchy to encourage the Defendant to keep on the path he has begun and that he will be rewarded for doing so. A heavy sentence, counsel suggests, would be more discouraging than encouraging.  While the Court can certainly punish the Defendant for his behavior, counsel urges the Court to consider what led to the Defendant's behavior and give him some hope to keep him on the right path. Counsel believes that it would be in the public's interest to do so.

RESPECTIVELY SUBMITTED

Dated this 24ᵗʰ day of February 2026.

Respectfully submitted,
The Defendant,
Daniel Loughman,
By his attorney

8

_/s/  Richard C. Chambers, Jr. Esq._
Richard C. Chambers, Jr. Esq.
BBO # 651251
Chambers Law Office
220 Broadway, Suite 404
Lynnfield, MA  01940
Office: (781) 581-2031
Cell: (781) 363-1773
Fax: (781) 581-8449
Richard@chamberslawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

/s/  Richard C. Chambers, Jr.
Richard C. Chambers, Jr.

9